Stephen E.W. Hale (5285)
Austin J. Riter (11755)
Dick J. Baldwin (14587)
Parr Brown Gee & Loveless
101 S. 200 E., Suite 700
Salt Lake City, Utah 84111
Telephone: 801.532.7840
Facsimile: 801.532.7750
shale@parrbrown.com
ariter@parrbrown.com
dbaldwin@parrbrown.com

*Attorneys for Defendants*

---

## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| DANYALE BLACKMORE and VINCENT BLACKMORE, <br><br>         Plaintiffs, <br><br> v. <br><br> HURRICANE CITY, by and through its Administrators and its Police Department; LYNN EXCELL, Chief of the Hurricane City Police Department; JARED CARLSON, a former Hurricane City Police Officer; NANETTE BILLINGS, Mayor of Hurricane City; UTAH LOCAL GOVERNMENTS TRUST; STEVEN HANSEN; and JOHN and JANE DOES 1-10, <br><br>         Defendants. | **MOTION TO DISMISS** <br><br> **Oral Argument Requested** <br><br> Case No: 4:24-cv-00078-PK <br><br> Magistrate Judge Paul Kohler |

Pursuant to rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Hurricane City, Lynn Excell, Jared Carlson, Nanette Billings, Utah Local Governments Trust, Steven Hansen, and Does 1-10 (together, Defendants or the City) respectfully move this Court for an order dismissing Plaintiffs Danyale Blackmore and Vincent Blackmore's complaint (Dkt. 1) with prejudice.

## Introduction

This is not the first lawsuit initiated by the Blackmores against the City and arising from Danyale's arrest and prosecution. The Blackmores' first lawsuit (*Blackmore I*) failed when this Court entered summary judgment in favor of the defendants—which, importantly, included some of the defendants named in this litigation (the City and Officer Jared Carlson). Indeed, the Blackmores have re-asserted claims very similar to some of those already asserted and dismissed in *Blackmore I*. And all other claims asserted in this litigation arise from the same transaction or occurrence at issue in *Blackmore I*. This entire litigation is therefore barred under the doctrine of claim preclusion. The Blackmores have appealed this Court's summary judgment order in *Blackmore I*. Should the Tenth Circuit reverse, they can seek leave to assert the claims they raise in this lawsuit. Otherwise, the time to raise these claims passed once this Court granted summary judgment in *Blackmore I*. Alternatively, if the Court concludes claim preclusion does not bar this suit because the order on appeal is insufficiently final to apply claim preclusion, the Court should exercise its discretion to dismiss this case under the claim-splitting doctrine.

Even if the Blackmores could split their claims by filing a second lawsuit, Vincent lacks standing to assert any of the claims asserted here, just as he did in *Blackmore I*. Each of the claims arise from actions taken against his wife, Danyale, not him. Thus, Vincent cannot satisfy Article

III's case-or-controversy requirement and this court lacks subject-matter jurisdiction over claims asserted by him.

As to the merits of the Blackmores' claims, they also fail to allege sufficient facts to state plausible claims for relief. And for each of the claims, even if the Court assumes the Blackmores stated a claim for relief, each Defendant enjoys qualified immunity.

Finally, the Blackmores fail to allege facts sufficient to support their claim for punitive damages.

## I.     Factual Background

In this litigation, Danyale and Vincent assert the City violated their First and Fourth Amendment rights by arresting and prosecuting Danyale after an incident at a hotel owned by the Blackmores in January 2020. *See* Docket, No. 201300009 (Hurricane Just. Ct.), attached hereto as **Exhibit A**. Specifically, the Blackmores' Complaint alleges that the City was motivated to retaliate against them because of a dispute between the City and the Blackmores regarding an easement.[1] They assert § 1983 claims against all Defendants for malicious prosecution, retaliation, and abuse of process, and a conspiracy claim against Chief Excell, Mayor Billings, and Mr. Hansen. This is not the first time the Blackmores have sued the City for Danyale's arrest in January 2020 and her

---

[1] That dispute has also been litigated extensively in state and federal court. The first suit was *Utah Associated Mun. Power Sys. v. 3 Dimensional Contractors*, No. 180500577 (Utah Dist. Ct. filed Dec. 17, 2018), in which the district court entered summary judgment against the Blackmores and was recently affirmed-in-part and reversed-in-part by the Utah Court of Appeals, 547 P.3d 829 (Utah Ct. App. 2024). The second suit was *3 Dimensional Contractors, Inc. v. City of Hurricane*, No. 200500230 (Utah Dist. Ct. filed May 1, 2020), in which the district court dismissed the Blackmores' claims. The third suit was *3 Dimensional Contractors, Inc. v. Utah Association of Mun. Power Sys.*, No. 4:22-cv-00045 (D. Utah filed July 19, 2022), which was filed by the Blackmores' counsel in this case and in which this Court dismissed each of the Blackmores' claims on the grounds of claim preclusion and issue preclusion, 2023 WL 6318120 (D. Utah Sept. 28, 2023) (unpublished).

subsequent prosecution.

### A.    *Blackmore v. Carlson*, No. 4:21-cv-00026-DN-PK (D. Utah) (*Blackmore I*)

In 2021, the Blackmores filed a lawsuit in this Court asserting § 1983 claims against the City, two of the City's police officers (Jared Carlson and Eric DeMille), Washington County, and a Washington County deputy (La-Norma Ramirez). A copy of the operative complaint in that litigation is attached hereto as **Exhibit B**.[2] Like this litigation, *Blackmore I* asserted claims arising from Danyale's arrest in January 2020 and her subsequent prosecution.

In *Blackmore I*, the Blackmores asserted claims against Officers Carlson and DeMille for unlawful search and seizure and excessive force, a claim against Deputy Ramirez for illegal strip search and outrageous conduct, a claim against the City and Washington County for failure to train or supervise, a claim against Officers Carlson and DeMille and the City for abuse of process, and a claim against all defendants for civil rights violations under state law. Ex. B at 16-28. All of the factual allegations asserted in support of the claims in *Blackmore I* involve the incident at the hotel owned by the Blackmores in January 2020, the resulting arrest, search, detention, and prosecution of Danyale. Ex. B at ¶¶ 17-111, 137 ("Danyale has been damaged . . . by being handcuffed without cause, falsely arrested, and wrongfully jailed; by being maliciously, abusively and falsely charged with several crimes; . . . by being prosecuted falsely; by being the victim of abuse of process; and by being harassed and intimidated by Defendants since January 6, 2020 as set forth herein."). The Complaint also includes allegations about the Blackmores' easement dispute with the City,

---

[2] When considering a motion to dismiss, the Court "can take judicial notice of its own decision and records in a prior case involving the same parties" without converting the motion to one for summary judgment. *Merswin v. Williams Cos., Inc.*, 364 F. App'x 438, 441 (10th Cir. 2010) (unpublished).

asserting that various city officials held animosity toward the Blackmores due to the dispute. Ex. B at ¶¶ 112-24.

Early in the litigation, this Court dismissed the Blackmores' claim for excessive force, concluding that the officers were entitled to qualified immunity. Dkt. 36 at 47, *Blackmore I*, No. 4:21-cv-00026-DN-PK (Dec. 1, 2021).

While *Blackmore I* was being litigated in this Court, the City continued prosecuting Danyale for disorderly conduct and interference with a police officer in the Hurricane Justice Court, case number 201300009. *See* Ex. A. On January 24, 2024, a jury acquitted Danyale of both charges. Ex. A at 16. At that point in time, the defendants in *Blackmore I* had fully briefed two motions for summary judgment. Danyale immediately notified this Court of the jury's verdict in her state prosecution by filing a motion asking this Court to take judicial notice of the verdict and certain jury instructions and by referencing the jury's verdict in a notice of supplemental authority. Dkt. 144, *Blackmore I*, No. 4:21-cv-00026-DN-PK (Jan. 29, 2024); Dkt. 146 at 3, *Blackmore I*, No. 4:21-cv-00026-DN-PK (Feb. 12, 2024). Before this Court ruled on the pending motions for summary judgment, it granted Danyale's motion to take judicial notice of the jury's verdict in her state prosecution. Dkt. 157, *Blackmore I*, No. 4:21-cv-00026-DN-PK (June 6, 2024). In other words, there can be no doubt that Danyale's prosecution and acquittal were known to both the Blackmores and this Court before summary judgment was granted in *Blackmore I*.

This Court then granted summary judgment to defendants on all claims except the Blackmores' illegal strip search claim against Deputy Ramirez. Dkt. 155, *Blackmore I*, No. 4:21-cv-00026-DN-PK (June 3, 2024); Dkt. 159, *Blackmore I*, No. 4:21-cv-00026-DN-PK, 2024 WL 2883010, at *25 (D. Utah June 7, 2024) (unpublished) (hereinafter, "June 7 Order").

Specifically, this Court concluded that Vincent lacked standing, the Blackmores had failed to present any evidence in support of their abuse of process claims, and the Blackmores had failed to show a widespread practice of unlawful arrests necessary to support their failure to train or supervise claims. Dkt. 159, *Blackmore I*, No. 4:21-cv-00026-DN-PK, 2024 WL 2883010, at *13-14, 21-22. This Court also concluded that the Blackmores' unlawful seizure claims failed for two independent reasons: probable cause justified Danyale's arrest and the officers were entitled to qualified immunity. *Id.* at *14-20. Finally, this Court concluded the Blackmores' state law claims fail under state law. *Id.* at *22-25.

This Court certified as final the June 7 Order, pursuant to Rule 54(b). Dkt. 169, *Blackmore I*, No. 4:21-cv-00026-DN-PK (Aug. 12, 2024). The June 7 Order is currently on appeal at the Tenth Circuit. *Blackmore v. Carlson*, No. 24-4074 (10th Cir.). On appeal, Danyale has challenged this Court's determination that the officers had probable cause to arrest Danyale and that they were entitled to qualified immunity for the unlawful seizure and excessive force claims. (Opening Brief of Appellant, *Blackmore v. Carlson*, No. 24-4074 (10th Cir. filed Nov. 19, 2024), attached hereto as **Exhibit C**.) Importantly, Danyale has not challenged this Court's decision to grant summary judgment on all claims asserted against the City, including the abuse of process claim. *Id.*

### B.   *Blackmore v. Hurricane City*, No. 4:24-cv-00078-PK (D. Utah) (*Blackmore II*)

After this Court granted summary judgment in *Blackmore I*, the Blackmores initiated this suit, *Blackmore II*, asserting four more claims arising from Danyale's January 2020 arrest and subsequent prosecution. In *Blackmore II*, the Blackmores again assert claims against the City and Officer Carlson, and also name new defendants: the City of Hurricane's Chief of Police (Lynn Excell), Mayor (Nanette Billings), insurer (the Utah Local Governments Trust), and the insurer's

CEO (Steven Hansen).

The Blackmores assert claims against all defendants for malicious prosecution, retaliation for free speech, and abuse of process. (Dkt. 1 at ¶¶ 182-244.) They also assert a conspiracy claim against Hurricane's Chief of Police and Mayor and the CEO of its insurer. (*Id.* at ¶¶ 245-54.)

## II.    Argument

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

This Court should dismiss each of the Blackmores' claims. All claims are barred by claim preclusion or should be dismissed under the claim-splitting doctrine. Additionally, Vincent lacks standing to assert any of the claims. Each of the claims also fails on the merits or is barred by qualified immunity. Finally, the Blackmores have failed to state a claim for punitive damages.

### A.    Plaintiffs' claims are barred under the claim-preclusion doctrine.

The claims asserted in this litigation are barred by the claim preclusion doctrine because they arise from the same transaction or occurrence that gave rise to the claims dismissed in the June 7 Order in *Blackmore I*. This Court should therefore dismiss this litigation in its entirety because the Blackmores were required to assert each of the claims in *Blackmore I*.

The doctrine of claim preclusion "will prevent a party from litigating a legal claim that was or could have been the subject of a previously issued final judgment." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005). The doctrine protects against "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979). "The principle underlying the rule of claim preclusion is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not have another chance to do so." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017). "One major function of claim preclusion, then, is to force a *plaintiff* to explore all the facts, develop all the theories, and demand all the remedies in the first suit." *Stone v. Dept. of Aviation*, 453 F.3d 1271, 1279 (10th Cir. 2006) (quoting 18 Wright & Miller, Fed. Prac. & Proc. § 4408).

To apply claim preclusion, three elements must be satisfied: "(1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Lenox MacLaren*, 847 F.3d at 1239. Each of the elements are satisfied here.

1.   <u>The June 7 Order was a final judgment on the merits</u>

The June 7 Order is a final judgment on the merits because it was certified as final under Rule 54(b).

Under Rule 54(b), "the court may direct entry of a final judgment as to one or more . . . parties." Fed. R. Civ. P. 54(b). And a Rule 54(b) certification satisfies the requirement for a final judgment under the claim preclusion doctrine. The Tenth Circuit's analysis of claim preclusion is

frequently guided by Wright & Miller's treatise, *Federal Practice and Procedure. See, e.g.*, *MACTEC*, 427 F.3d at 832; *Nwosun v. Gen. Mills Restaurants, Inc.*, 124 F.3d 1255, 1258 (10th Cir. 1997); *Lenox MacLaren*, 847 F.3d at 1240. And according to Wright & Miller, an order certified as final under Rule 54(b) is a final judgment and is treated as such for purposes of claim preclusion. Wright & Miller, Fed. Prac. & Proc. § 4433 ("Any need to achieve finality as to a particular matter can be served by entry of final judgment under Civil Rule 54(b).").

The Blackmores asked this Court to certify its claims against the City and Officers Carlson and DeMille as final and to enter a final judgment allowing them to appeal this Court's decision on the merits granting summary judgment on those claims to those defendants. The defendants did not oppose that motion and this Court granted it. Indeed, the Blackmores are currently appealing this Court's ruling to the Tenth Circuit. Thus, for purposes of claim preclusion, a final judgment has been entered as to the Blackmores' claims against the City and Officers Carlson and DeMille for excessive force, unlawful search and seizure, failure to train, abuse of process, and state civil rights claims.

### 2. There is identity of parties or privies between the two suits

This litigation involves defendants who were either named in *Blackmore I* or are privies of the City, who was a named defendant in *Blackmore I*.

"Generally, claim preclusion requires that the named parties in the first and second suits be identical." *Lenox MacLaren*, 847 F.3d at 1240. "But an exception to this rule applies when there is 'privity' between the defendant(s) bound by the first suit and the new defendant(s) named in the second suit. *Id.*

In the context of claim preclusion, "no definition of privity can be automatically applied in

all cases." *Century Indem. Co. v. Hanover Ins. Co.*, 417 F.3d 1156, 1160 (10th Cir. 2005). "The substantive legal relationships justifying preclusion are sometimes collectively referred to as 'privity.'" *Taylor v. Sturgell*, 553 U.S. 880, 894 n.8 (2008). But "it has come to be recognized that the privity label simply expresses a conclusion that preclusion is proper." Wright & Miller, Fed. Prac. & Proc. § 4449. "Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." *Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008).

The City and Officer Carlson are named defendants in this suit and also were named defendants in *Blackmore I*, and therefore satisfy the second claim-preclusion factor as to those parties. That factor is also satisfied as to the remaining defendants in this litigation because they are all in privity with the City.

A public official sued in their official capacity is widely recognized as being in privity with their government employer, for purposes of the claim-preclusion doctrine. *E.g.*, *Lavasek v. White*, 339 F.2d 861, 863 (10th Cir. 1965) (recognizing "complete privity of parties" between the State of New Mexico and the State Engineer, members of the State Highway Commission, and a county); *Balcerzak v. City of Milwaukee*, 163 F.3d 993, 995-96 (7th Cir. 1998); *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1998); *Mears v. Town of Oxford*, 762 F.2d 368, 371 n.3 (4th Cir. 1985); *Town of Seabrook v. State of N.H.*, 738 F.2d 10, 11 (1st Cir. 1984). Consequently, there can be no question that the second factor is also satisfied as to Chief Excell and Mayor Billings.

Finally, the Blackmores assert claims against the City's insurer, the Utah Local Governments Trust (ULGT) and the ULGT's CEO, Steven Hansen. ULGT and Mr. Hansen are also in privity with the City, and their inclusion in this litigation appears likely to be a desperate

attempt to pursue the Blackmores' empty claims. "Nonmutual claim preclusion is most attractive in cases that seem to reflect no more than a last desperate effort by a plaintiff who is pursuing a thin claim against defendants who were omitted from the first action because they were less directly involved than the original defendants." Wright & Miller, Fed. Prac. & Proc. § 4464.1. And indeed, the City's relationship with ULGT and ULGT's CEO is a paradigmatic example of the type of "pre-existing substantive legal relationship" that establishes privity for purposes of claim preclusion. *See Taylor*, 553 U.S. at 894.

The Blackmores have alleged, as they must, that ULGT's and Mr. Hansen's conduct made them tantamount to government actors acting "under color of state law." *See* 42 U.S.C. § 1983. Defendants disagree that the Blackmores can demonstrate ULGT and Mr. Hansen are state actors, but at the motion to dismiss stage, the Blackmores' allegations about them demonstrate that they have a sufficiently concrete legal relationship—or, at minimum, a sufficiently close relationship— with the City to be in privity with it. Indeed, the Blackmores allege that ULGT is "the insurer for Hurricane City and Defendants Excell, Carlson and Billings," and that ULGT operates under the Utah Interlocal Cooperation Act. (Dkt. 1 at ¶¶ 10, 141.) They also allege that ULGT and Mr. Hansen hired an attorney to defend the City in the *Blackmore I* litigation and instructed that attorney to "assist, direct, and ultimately control" Danyale's prosecution to reduce or eliminate any possible damages in *Blackmore I*. (Dkt. 1 at ¶¶ 138-40.) In other words, ULGT and Mr. Hansen had a preexisting legal relationship with the City, as its insurer, and the Blackmores' claims against ULGT and Mr. Hansen all arise from actions taken in connection with that preexisting legal relationship. Thus, this Court should conclude that ULGT and Mr. Hansen were in privity with the City and also satisfy the second claim-preclusion factor.

3.    <u>Both suits arise from the same transaction or occurrence</u>

The cause of action in this litigation and *Blackmore I* is identical because the claims in both cases arise from the same transaction or occurrence.

Claim preclusion "precludes a party or its privies from relitigating issues that were or could have been raised in an earlier action." *King v. Union Oil Co. of Calif.*, 117 F.3d 443, 445 (10th Cir. 1997). To determine whether there is identity of the cause of action between both suits, the Tenth Circuit applies the transactional approach. *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1335 (10th Cir. 1988). In other words, "a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence. All claims arising out of the transaction must therefore be presented in one suit or be barred from subsequent litigation." *Nwosun*, 124 F.3d at 1257; *Lowell Staats Mining Co., Inc. v. Phila. Elec. Co.*, 878 F.2d 1271, 1274 (10th Cir. 1989) ("A final judgment extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction or series of connected transactions, out of which the action arose."). "What constitutes a 'transaction' or a 'series' is to be determined pragmatically considering whether the facts are related in time, space, origin, or motivation, and whether they form a convenient trial unit." *Lowell Staats*, 878 F.2d at 1274. Accordingly, a plaintiff cannot "avoid supplementing his complaint with facts *that are part of the same transaction* asserted in the complaint, in the hope of bringing a new action arising out of the same transaction on some later occasion. Under the transactional test, a new action will be permitted only where it raises *new and independent* claims, not part of the previous transaction, based on the new facts." *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1150 (10th Cir. 2006). "It is immaterial that the legal basis for the relief sought in the two complaints is different; it is the

occurrence from which the claims arose that is central to the 'cause of action' analysis." *Nwosun, 124 F.3d at 1257*.

There is no question that the Blackmores' complaint in this litigation arises from the exact transaction or occurrence that gave rise to *Blackmore I*, which was Danyale's arrest in January 2020 and her subsequent prosecution. In fact, it is unclear whether the Blackmores had a nonfrivolous basis to re-assert the abuse of process claim in this litigation as to the City and Officer Carlson. Although the claim asserted in this case rests on a theory focused on the prosecution, the abuse of process claim in *Blackmore I* also rested on the prosecution by alleging that her damages included "being prosecuted falsely." (Ex. B at ¶¶ 137, 203 (asserting damages for prosecution as part of the abuse of process claim).) The June 7 Order granted summary judgment to the City on that abuse of process claim, so it is unclear to Defendants how there is a basis in law or fact to re-assert it now.

The Blackmores also relied on the prosecution to advance other claims in *Blackmore I*. For example, when opposing the City's motion for summary judgment, the Blackmores argued "the continued prosecution of Danyale on false charges shows a direct causal link between [the City]'s custom and practice and Danyale's warrantless arrest." Dkt. 110 at 48, *Blackmore I*, No. 4:21-cv-00026-DN-PK (May 10, 2023). The Blackmores later asked this Court to take judicial notice of, and rely on, the jury's verdict and certain jury instructions from her prosecution. Dkt. 144, *Blackmore I*, No. 4:21-cv-00026-DN-PK. Indeed, the Blackmores had ample opportunity to seek leave to amend the complaint once Danyale's criminal prosecution was resolved, because nearly six months passed between the jury verdict and the summary judgment order in *Blackmore I*.

But even if the Blackmores had not relied on the prosecution in *Blackmore I*, Danyale's

arrest and the subsequent prosecution are part of a series of connected transactions. Although the arrest and prosecution "are separate factual events, they are not unrelated transactions" because they are related in time, space, origin, and motivation. *See King*, 117 F.3d at 445. Indeed, the two suits are inextricably intertwined, as illustrated by the "substantial overlap of related facts" in this litigation and *Blackmore I*. *See id.* The complaints in both cases focus on the Blackmores' prior dispute with the City and the incident in January 2020 that resulted in Danyale's arrest and prosecution, and they both assert claims resulting from those events. Consequently, "[the Blackmores'] various claims, if brought together, would form a convenient trial unit," because the claims in both cases are predicated entirely on the Blackmores' dispute with the City, Danyale's arrest in January 2020, and her subsequent prosecution. *See id.*

In sum, each of the claim-preclusion factors are satisfied, and this Court should dismiss this litigation in its entirety because the Blackmores were required to bring their current claims in *Blackmore I*.

**B.      Plaintiff's claims are also barred by the claim-splitting doctrine.**

Should the Court conclude that the Rule 54(b) certification is inadequate to satisfy the first claim-preclusion factor, it should still exercise its discretion to dismiss this case in its entirety under the claim-splitting doctrine.

"Claim splitting occurs when two lawsuits are filed involving the same parties and a common set of facts." *RMG Media, LLC c. Donovan Marine, Inc.*, No. 2:23-cv-251-TC-CMR, 2024 WL 4216007, at *6 (D. Utah Sept. 17, 2024) (unpublished). The doctrine is premised on the principle that "plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139

(2d Cir. 2000). Importantly, although "a final judgment is necessary for traditional claim preclusion analysis, it is not required for the purposes of claim splitting." *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011); *see also Brady v. UBS Fin. Servs., Inc.*, 538 F.3d 1319, 1327 n.10 (10th Cir. 2008). That is because "claim splitting is more concerned with the district court's comprehensive management of its docket, whereas [claim preclusion] focuses on protecting the finality of judgments." *Katz*, 655 F.3d at 1218. "[T]he test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit." *Id.* In other words, dismissal is appropriate if "assuming the first suit was already final, the second suit would be precluded under [claim preclusion] analysis." *Id.* at 1219.

As demonstrated above, this litigation is barred by the claim preclusion doctrine. But if the Court concludes that its Rule 54(b) certification in *Blackmore I* is inadequate to satisfy the requirement for a final judgment, it should exercise its discretion to dismiss this litigation under the claim-splitting doctrine.

### C.    Vincent lacks standing to assert any of the claims in this litigation.

To demonstrate Article III standing, "[t]he plaintiff must show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004).

As in *Blackmore I*, Vincent lacks standing to assert any of the claims raised in this litigation. Each of the claims arise from actions taken against Danyale, not Vincent. Vincent "cannot rest his claim to relief on the legal rights or interests of third parties," so his claims must all be dismissed. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

### D.    The Blackmores' claims fail on the merits.

Each of the Blackmores' claims fail on the merits and because the Defendants enjoy immunity from them. The merits of each claim will be discussed separately below. But first, Defendants explain a threshold point applicable to the merits of each claim. The Blackmores' claims implicate the Court's prior decisions about the existence of probable cause in Danyale's prosecution. The Blackmores' Complaint in this case identifies this Court's motion-to-dismiss order in *Blackmore I*, in which this Court concluded that the Blackmores had alleged facts that, when accepted as true, were sufficient to demonstrate that the officers lacked probable cause to arrest Danyale for interfering with a police officer or disorderly conduct. Based on that ruling, the Blackmores make the conclusory allegation that there was no probable cause to arrest Danyale. (Dkt. 1 at ¶¶ 168, 174.) But in the June 7 Order—which this Court certified as final under rule 54(b) and is currently on appeal at the Tenth Circuit—this Court granted summary judgment on the ground that the evidence showed there was probable cause to arrest Danyale for interfering with a police officer. Dkt. 159, *Blackmore I*, No. 4:21-cv-00026-DN-PK, 2024 WL 2883010, at *19. The justice court overseeing Danyale's prosecution had also concluded that there was probable cause to arrest Danyale for interfering with a police officer. *Id.* at *20 n.204. In light of this Court's prior determination, which has been reduced to a final judgment, it need not accept as true the Blackmores' inconsistent allegation about the lack of probable cause. As a consequence, the Blackmores' claims fail on the merits because they cannot state a claim for relief.

As will also be explained below, qualified immunity provides independent grounds to dismiss the Blackmores' claims. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11-12

(2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "To be clearly established, a right must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The test does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. Thus, "qualified immunity generally protects all public officials except those who are 'plainly incompetent or those who knowingly violate the law.'" *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

### 1.   The Blackmores' First Amendment retaliation claims fail.

The Blackmores' second cause of action asserts a claim for retaliatory inducement to prosecute, but they do not allege sufficient facts to state that claim.

To show retaliatory inducement to prosecute, plaintiffs must allege, *inter alia*, that "the non-prosecuting official acted in retaliation, and must also show that he induced the prosecutor to bring the charges that would not have been initiated without his urging." *Hartman v. Moore*, 547 U.S. 250, 262 (2006); *McBeth v. Himes*, 598 F.3d 708, 717 n.4 (10th Cir. 2010) (interpreting *Hartman* as applying to § 1983 claims for retaliatory prosecution as well as *Bivens* actions). "Some sort of allegation, then, is needed both to bridge the gap between the non-prosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity. . . . The connection, to be alleged and shown, is the absence of probable cause." *Hartman*, 547 U.S. at 263; *accord Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007).

The Supreme Court recently held that the presence of probable cause does not categorically bar Fourth Amendment malicious prosecution claims. *Chiaverini v. City of Napoleon*, 552 U.S.

556, 563 (2024). But *Chiaverini* did not address First Amendment retaliation claims, like those asserted by the Blackmores. Nor did it give any indication that *Chiaverini* overruled or modified *Hartman*'s holding that such claims require a lack of probable cause. When applying Supreme Court precedent, the Tenth Circuit instructs, "If a precedent of the Supreme Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving the Supreme Court the prerogative of overruling its own decisions." *Schell v. Chief Just. & Justs. of the Okla. Sup. Ct.*, 11 F.4th 1178, 1182 (10th Cir. 2021) (quoting *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989)). Accordingly, despite *Chiaverini*'s recent holding affecting Fourth Amendment malicious-prosecution claims, *Hartman* continues to require a lack of probable cause to state a claim for First Amendment retaliation.

This Court's June 7 Order determined that probable cause existed for Danyale's interfering with a police officer. Where, as here, probable cause existed for one of the charges, the Blackmores cannot show that any of the defendants induced the prosecution, because the existence of probable cause necessarily forecloses any showing that the prosecutor would not have otherwise initiated the charges. And indeed, even if probable cause did not exist, the Blackmores' complaint fails to allege any specific facts describing efforts by any of the Defendants to induce the prosecution. Instead, the Blackmores only allege generalized and conclusory allegations. The Blackmores' First Amendment retaliation claim must fail.

Although it is unclear, the Blackmores' second claim appears to also assert a claim for First Amendment retaliatory arrest. Assuming the Blackmores intend to assert that claim, it also fails.

"[A] First Amendment retaliation claim based on a false arrest requires a separate

17

'threshold showing'—generally, a plaintiff must show a false arrest," or in other words, a lack of probable cause. *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1227 (10th Cir. 2020) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 407-08 (2019)). "This rule is subject to "a narrow exception—that probable cause will not defeat a retaliatory-arrest claim if the plaintiff could show that officers would usually not arrest under similar circumstances." *Asprey v. N. Wyo. Comm. Coll. Dist.*, 823 F. App'x 627, 634 n.4 (10th Cir. 2020) (unpublished) (quoting *Hinkle*, 962 F.3d at 1227).

This Court previously determined that probable cause existed for Danyale's interference with a police officer, so the Blackmores cannot make the threshold showing. And the Blackmores have not alleged any facts plausibly showing that officers would usually not arrest under similar circumstances. Nor have the Blackmores alleged any facts plausibly showing that any Defendants other than Officer Carlson had any involvement in the arrest. Accordingly, assuming the Blackmores intend to assert a First Amendment retaliatory arrest claim, it also fails.

The Blackmores also fail to allege facts plausibly showing that Chief Excell retaliated against them. Their minimal allegations about Chief Excell are limited to: (1) he allegedly "knew" there was no probable cause, (2) he encouraged the continued prosecution, (3) he was angry about the Blackmores' criticisms of him, and (4) he knew that Officer Carlson had moved to Palau but did not inform the Blackmores' attorney. Those allegations conflict with this Court's prior legal determinations or lack specificity and amount to little more than conclusory assertions. Setting aside the inadequacies of the allegations themselves, they merely allege facts consistent with a police chief's routine involvement and knowledge of an arrest and prosecution.

Similarly, the Blackmores fail to allege facts plausibly showing that Mayor Billings retaliated against them. All of the Blackmores' allegations about Mayor Billings involvement in

the prosecution are conclusory and lacking the specificity necessary for them to plausibly state a claim. Indeed, the Blackmores do not allege any specific action by Mayor Billings, other than hearing the Blackmores' complaints in public meetings and encouraging Danyale's prosecution. (Dkt. 1 at ¶ 192.) But the complaint contains no specific allegations about when or how Mayor Billings encouraged the prosecution, much less allegations that any such encouragement was retaliatory.

The Blackmores also cannot premise their claims against Chief Excell or Mayor Billings on supervisory liability, because "three elements [are] required to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation; and (3) state of mind." *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 767 (10th Cir. 2013). The Blackmores have not alleged facts plausibly satisfying those elements.

The claims against ULGT and Mr. Hansen are similarly flawed. The Complaint fails to allege any facts plausibly showing that ULGT or Mr. Hansen effectively controlled Danyale's prosecution, rather than simply advising about it in connection with their role in defending against *Blackmore I*.

Even assuming the Blackmores had stated valid First Amendment retaliation claims, the Defendants would be protected by qualified immunity. The Blackmores assert a complicated theory of retaliation arising from a series of lawsuits and an incident that gave rise to probable cause sufficient to prosecute Danyale. The Blackmores cannot identify case law clearly establishing that the Defendants' conduct violated the Blackmores' constitutional rights with the requisite degree of "particularized" showing required by the qualified immunity doctrine.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

> 2.    The Blackmores' Fourth Amendment malicious-prosecution claims fail.

The Blackmores assert a claim for malicious prosecution, relying on the recent holding in *Chiaverini v. City of Napoleon*, in which the Court recognized that the existence of probable cause does not create a categorical bar to a Fourth Amendment malicious-prosecution claim. 602 U.S. at 558-59. But *Chiaverini* also declined to resolve uncertainty about how a plaintiff can demonstrate the necessary causal element where probable cause existed for at least one charge. *Id.* at 565-65.

"A Fourth Amendment malicious-prosecution suit depends not just on an unsupported charge, but on that charge's causing a seizure." *Id.* at 564. Here, Defendants have failed to allege any facts demonstrating that Danyale's seizure, arrest, or prosecution were caused by the lack of probable cause for disorderly conduct when there was probable cause to seize, arrest, and prosecute her based on the probable cause for interference with a police officer. Instead, her complaint repeatedly ignores this Court's determination that probable cause existed for the interference charge, and instead asserts the incorrect legal conclusion that no probable cause existed, which this Court is not required to accept as true. Having failed to allege facts that provide a causal relationship between the lack of probable cause and the asserted malicious prosecution, the Blackmores' malicious prosecution fails on its merits.

The Defendants also enjoy qualified immunity. The Tenth Circuit has long explained that "lack of probable cause is an essential element of the tort of malicious prosecution." *Taylor v. Meacham*, 82 F.3d 1556, 1562-63 (10th Cir. 1996); *see also Carbajal v. Watada*, No. 21-1370, 2024 WL 3887252, at *3 (10th Cir. Aug. 21, 2024) (unpublished) (reiterating malicious-prosecution claims require the plaintiff to show that "there was *no* probable cause to support the

original arrest" (emphasis added)). But in the summer of 2024, years after Danyale's prosecution was initiated, *Chiaverini* modified that standard, instructing courts that the existence of probable cause does not categorically bar a malicious-prosecution claim. 602 U.S. 558-59. Indeed, the Blackmores' complaint expressly relies on that modified standard to assert its malicious-prosecution claim. (Dkt. 1 at ¶ 181.) The Blackmores' reliance on *Chiaverini* is ultimately fatal to their claims for malicious prosecution, because it had not been decided at the time of the conduct that they allege constituted a violation of their constitutional rights. As such, even assuming that prosecuting Danyale violated her constitutional rights, the violation was not clearly established at the time.

### 3.    The Blackmores' abuse of process claims fail.

Setting aside the Blackmores' decision to assert seemingly frivolous abuse-of-process claims that have already been dismissed with prejudice in *Blackmore I*, the Blackmores have also failed to state a claim for abuse of process in this case and even if they had, each of the Defendants would be protected by qualified immunity.

State law provides the elements for an abuse of process claim under § 1983. *Erikson v. Pawnee Cnty. Bd. of County Comm'rs*, 263 F.3d 1151, 1155 n.5 (10th Cir. 2001). "Abuse of process has two elements: First, an ulterior purpose; second, an act in the use of the process not proper in the regular prosecution of the proceedings." *Hatch v. Davis*, 102 P.3d 774, 782 (Utah Ct. App. 2004) (quoting *Kool v. Lee*, 134 P. 906, 909 (Utah 1913)). "[A]buse of process is a narrow tort applying only to one who uses legal process against another primarily to accomplish a purpose for which it was not designed." *Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1265 (10th Cir. 2003). "Defending a lawsuit does not constitute misuse of the legal process."

*Anderson v. Toomey*, 324 F. App'x 711, 713 (10th Cir. 2009) (unpublished).

The Blackmores assert Defendants abused the criminal process by continuing to prosecute Danyale after the Blackmores had filed *Blackmore I*. (Dkt. 1 at ¶ 232.) They allege that "a primary purpose" for continuing the prosecution was to "avoid paying § 1983 and § 1988 damages." (*Id.*) The Blackmores suggest their filing of *Blackmore I* should have caused the City to discontinue Danyale's prosecution, simply because the ongoing prosecution might be an advantage to the City in defending against *Blackmore I*'s claim for damages. The Blackmores' claims appear to be premised on the notion that the relationship between the criminal prosecution and *Blackmore I* created improper incentives for how to pursue the two cases. But that problem—to the extent it existed—was one of the Blackmores' making, not the Defendants, because the Blackmores filed *Blackmore I* while the criminal prosecution was still proceeding. Indeed, the Blackmores' theory turns abuse of process on its head. In their view, the filing of *Blackmore I* should have accomplished a purpose for which § 1983 suits are prohibited from accomplishing—the dismissal of an ongoing prosecution—which would itself be an abuse of the legal process. *See D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004) (explaining that, under the *Younger* abstention doctrine, federal courts lack jurisdiction when a judgment in the federal claims would interfere with an ongoing state proceeding and explaining the "classic example . . . is a federal suit to enjoin a pending state criminal proceeding").

"If the criminal process is used for its intended purpose, 'the mere fact that it has some other collateral effect' does not render the action an abuse of process." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1245 (10th Cir. 2003) (quoting *Crease v. Pleasant Grove City*, 519 P.2d 888, 890 (Utah 1974)). Danyale's criminal prosecution was initiated before *Blackmore I* and the

Blackmores' complaint provides no allegations to explain why the filing of *Blackmore I* required the Defendants to discontinue prosecuting Danyale, much less that failing to discontinue the prosecution was such an improper use of legal process that it could create civil liability for the Defendants. Indeed, this Court has already concluded, in *Blackmore I*, that probable cause existed as to the charge for interference with a police officer.

There is no legal support for the Blackmores' claim, because no court has concluded that it is an abuse of process to continue pursuing an existing prosecution that is supported by probable cause despite the subsequent filing of an ultimately unsuccessful civil suit filed by the defendant and asserting defective civil rights claims relating to the conduct at issue in the prosecution.[3] The Blackmores have not alleged specific facts plausibly showing that the Defendants continued the prosecution to mitigate damages in *Blackmore I*, nor have they identified an act by Defendants that was not proper in the regular prosecution of the proceedings. The Blackmores appear to rest their claim on the delays associated with deposing Officer Carlson, after he moved out of the country, to Palau. But their bare allegations provide no basis to conclude that Officer Carlson's move to Palau had anything to do with legal proceedings involving the Blackmores, or that the remaining Defendants did anything improper relating to his deposition.

The Blackmores also assert a retaliation theory in support of their abuse of process claim (Dkt. 1 at ¶ 233.) As demonstrated above, any retaliation theory fails due to this Court's prior

---

[3] Quite the opposite, in fact. If a plaintiff seeks monetary relief in federal court for alleged constitutional issues involved in a pending state criminal proceeding, *Younger* abstention requires the federal court to stay the federal damages claims until the state proceeding is final. *D.L.*, 392 F.3d at 1228. Of course, if Danyale had been convicted, her damages claims would have been barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The Blackmores' claims in this litigation conflict with both the *Younger* doctrine and the *Heck* bar.

determination that the prosecution was supported by probable cause on the charge for interference with a police officer.

In any event, even assuming the Blackmores have stated a claim for abuse of process, the claim is barred by qualified immunity because it was not clearly established that it would be an abuse of process to continue prosecuting Danyale after the Blackmores filed a lawsuit claiming her arrest and prosecution was unlawful. That is particularly so in light of this Court's determination that the prosecution was supported by probable cause on the charge for interference with a police officer.

### 4.    The Blackmores' civil conspiracy claims fail.

To state a claim for civil conspiracy, the Blackmores must show "at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010). The agreement "must be illegal," which, "[i]n the § 1983 context, that means the agreement must relate to 'some deprivation of a federally protected right.'" *Frasier v. Evans*, 992 F.3d 1003, 1025 (10th Cir. 2021) (quoting *Mitchell v. City of Moore*, 218 F.3d 1190, 1198 (10th Cir. 2000)).

As demonstrated above, the Blackmores have failed to allege a deprivation of a federally protected right, so their civil conspiracy claim necessarily fails as well. Indeed, "proof that defendants formed an agreement or conspired to engage in lawful activities—including lawful [law enforcement] activities—would be inadequate to support a § 1983 conspiracy claim." *Id.*

Even if the Blackmores had stated a claim for civil conspiracy, and even assuming the ULGT and Mr. Hansen can be deemed state actors, the claim would be barred by qualified

immunity. It is not clearly established that it is a constitutional violation to continue a preexisting criminal prosecution after the criminal defendant initiates an unsuccessful civil rights lawsuit relating to the events giving rise to the prosecution, even when continuing to pursue that prosecution could conceivably help in defending against the civil claims.

### E.    The Blackmores failed to state a claim for punitive damages.

Finally, the Blackmores seek punitive damages. (Dkt. 1 at 41.) ""[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Burke v. Regalado*, 935 F.3d 960, 1037 (10th Cir. 2019) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)) (permitting punitive damages where the defendants' actions showed reckless disregard for an inmate who suffered a neck injury and frequently complained of pain and paralysis and died after remaining immobile for five days).

The Blackmores have not alleged facts that plausibly show that any Defendants acted out of evil motive or intent or a reckless or callous indifference to their federal rights, so their claim for punitive damages fails.

The claim for punitive damages against the City fails for the additional reason that it enjoys absolute immunity from punitive damage claims. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267-70 (1981).

### III.    Conclusion

For the foregoing reasons, Defendants move the Court to grant Defendants' motion to dismiss and dismiss the Complaint in its entirety with prejudice.

Dated: December 16, 2024                     /s/ Dick J. Baldwin

                                             Stephen E.W. Hale (5285)
                                             Austin J. Riter (11755)
                                             Dick J. Baldwin (14587)
                                             PARR BROWN GEE & LOVELESS
                                             101 S. 200 E., Suite 700
                                             Salt Lake City, Utah 84111
                                             Telephone:  801.532.7840
                                             Facsimile:  801.532.7750
                                             shale@parrbrown.com
                                             ariter@parrbrown.com
                                             dbaldwin@parrbrown.com

                                             *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day of December, 2024, I caused a true and correct copy of the foregoing **MOTION TO DISMISS** to be served via the CM/ECF filing system on the following:

> Robert B. Sykes
> C. Peter Sorensen
> Christina D. Isom
> Sykes McAllister Law Offices, PLLC
> 311 S. Main Street, Suite 240
> Salt Lake City, Utah 84111

/s/ Dick J. Baldwin